UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN PAUL MORAN, | ) | COMPLAINT AND EMERGENCY |
| CAROLINE COLARUSSO, | ) | MOTION FOR PRELIMINARY |
| HELEN BRADY, | ) | INJUNCTION |
| INGRID CENTURION, | ) | |
| CRAIG VALDEZ, | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH of | ) | |
| MASSACHUSETTS, | ) | |
| CHARLES D. BAKER JR. | ) | |
| in his official capacity as | ) | |
| Governor of the Commonwealth, | ) | |
| WILLIAM F. GALVIN | ) | |
| in his official capacity as | ) | |
| Secretary of the Commonwealth, | ) | |
| Defendants | ) | |

**INTRODUCTION**

John Paul Moran, Caroline Colarusso, and Helen Brady, candidates for US Congress in

Massachusetts in the November 3, 2020 election, and Ingrid Centurion and Craig Valdez,

candidates for Massachusetts State Representative in the November 3, 2020 election, file this

Complaint and Emergency Motion for Preliminary Injunction against Defendants the

Commonwealth of Massachusetts, Charles D. Baker Jr. in his official capacity as Governor of

the Commonwealth , and William F. Galvin, in his capacity of Secretary of the Commonwealth

of Massachusetts.  The overarching considerations for a complaint and emergency preliminary

injunction are the compelling exigencies raised in this complaint which are of statewide and

national concern; Plaintiffs raise matters that go to the core of the electoral process and involve

the constitutionality and reliability of how the citizens of this Commonwealth may cast their

votes, not only for the offices sought by Plaintiffs, but also, for the office of President and Vice

President of the United States of America as well as federal, statewide, regional and local offices.

This civil action brings to light election fraud, violations of the United States Constitution and

the Massachusetts Constitution, and violations of federal election laws and Massachusetts

election laws, in addition to the Equal Protection Clause of the U.S. Constitution, violations that

occurred during the 2020 General Election throughout the Commonwealth of Massachusetts. In

support thereof Plaintiffs would show unto the Court the following matters and facts:

**Massachusetts No-Excuse Vote By Mail Is Unconstitutional**

1.  Plaintiffs allege that the Act of July 6, 2020, Bill H.4820, an Act Relative To Voting

    Options In Response to COVID-19 signed into law by Defendant Charles D. Baker

    ("Governor Baker"), which added and amended various absentee and mail-in voting

    provisions in the Massachusetts Election Code, is unconstitutional and void ab initio

    because it contravenes the requirements of the United States Constitution and the

    Massachusetts Constitution and thereby equally infringes on the powers granted to the

    Massachusetts state legislature under Article I § 4, and Article II § 1 of the US

    Constitution. Plaintiffs argue that the Elections and Electors Clauses of the United States

    Constitution do not permit Massachusetts to violate its own state constitution's restrictions on

    its lawmaking power when enacting legislation for the conduct of federal elections.  In

    addition, this Court has subject matter jurisdiction under 28 U.S.C. § 1343 because this

    involves a federal election for Congress and for President of the United States.

2.  Several Massachusetts Representatives in the State House appear to support Plaintiff's

    argument as they had themselves previously petitioned for a legislative amendment to the

    Massachusetts Constitution to provide for no-excuse absentee voting in 2019 via House

    Docket No. 3811 (see Exhibit A), which was not adopted; these Representatives clearly

2

recognized that they are required to use a lawful legislative process to change the state Constitution in order to create an amendment to allow for no-excuse absentee voting.

3. Plaintiffs assert that Article CV of the Massachusetts Constitution provides a mechanism by which a qualified elector may cast his or her vote by absentee ballot in an election, only if the qualified voter satisfies the conditions precedent to meet the requirements of one of three limited exclusive circumstances under which absentee voting is authorized under the Massachusetts Constitution, only by qualified voters of the commonwealth who, at the time of such an election, are (1) absent from the city or town of which they are inhabitants, or (2) are unable by reason of physical disability to cast their votes in person at the polling places, or (3) who hold religious beliefs in conflict with the act of voting on the day on which such an election is to be held; there is no provision for expanding these exclusive circumstances, and this can only be done with a constitutional amendment.

**Article CV**

Article XLV of the articles of amendment to the constitution, as amended by Article LXXVI of said articles of amendment, is hereby annulled and the following is adopted in place thereof:

The general court shall have power to provide by law for voting, in the choice of any officer to be elected or upon any question submitted at an election, **by qualified voters of the commonwealth who, at the time of such an election, are absent from the city or town of which they are inhabitants or are unable by reason of physical disability to cast their votes in person at the polling**

**places or who hold religious beliefs in conflict with the act of voting on the
day on which such an election is to be held.   [emphasis added]**

4. Plaintiffs allege that mail-in voting in the form implemented through Bill H.4820 is an
attempt by the legislature to circumvent the Constitution to fundamentally overhaul the
Massachusetts voting system and permit universal, no-excuse, mail-in voting absent any
constitutional authority. This Act is the most expansive and fundamental change to the
Massachusetts election code, implemented illegally, to date. Plaintiffs allege that
Defendants, in conjunction with the Massachusetts Senate and House of Representatives,
used the COVID-19 health crisis to unconstitutionally change voting laws in the
Commonwealth, claiming that the Bill H.4820 was enacted to "provide for increased
voting options in response to COVID-19, therefore it is hereby declared to be an
emergency law, necessary for the immediate preservation of the public health and
convenience"; however Plaintiffs strongly argue that this Act is entirely unconstitutional
and that other options existed to effectively address the public health crisis and protect
the safety of voters while upholding the Massachusetts Constitution and law, such as
alternatively providing for expanded additional polling locations on election day which
would allow for safe social distancing to adequately preserve public health, and
maintaining lawful absentee voting options which include a provision for physical
disability, including COVID-19: for elections held through December 31, 2020,
Massachusetts state law clarifies that any person taking precautions relating to COVID-
19 qualifies for an absentee ballot by reason of physical disability[1].

---

[1] https://www.sec.state.ma.us/ele/eleabsentee/absidx.htm

4

5. Plaintiffs argue that in order to amend its state constitution, mandatory procedural requirements must be strictly followed according to Article XLVIII of the Massachusetts Constitution; as with every other amendment to the Massachusetts Constitution, such an amendment faces additional hurdles and requirements imposed by the Massachusetts Constitution before it becomes law and its changes have any valid, legally binding effect. According to Plaintiffs, the Massachusetts legislature did not follow the necessary procedures for amending the Constitution before enacting Bill H.4820 which created a new category of "no excuse" mail-in voting; therefore, the mail-in ballot scheme under Bill H.4820 is unconstitutional on its face and the Plaintiffs argue that it must be struck down, and all mail-in ballots that do not meet the requirements of one of the three limited exclusive circumstances noted above should be considered invalid and removed from the vote counts for the Massachusetts 2020 federal and state elections.

**Massachusetts Early Voting Is Unconstitutional**

6. Plaintiffs allege that the Act of July 6, 2020, Bill H.4820, an Act Relative To Voting Options In Response to COVID-19, which added and amended early voting provisions in the Massachusetts Election Code, is unconstitutional and void ab initio because it contravenes the requirements of the US Constitution and Massachusetts Constitution.

7. Plaintiffs argue that Article IX of the Massachusetts Constitution provides that the inhabitants of this Commonwealth "have an equal right to elect officers, *and to be elected*, for public employments" [emphasis added], and that the early voting provisions in the form implemented through Bill H.4820, which allowed early voting to begin on October 17, 2020, a full seventeen (17) days before the general election on November 3rd, 2020, constitutes a violation of Article IX as this early voting provision in Bill H.4820

unequally benefits incumbents and harms challengers competing for elected office in Massachusetts, whose recent primary occurred just 46 days before early voting on September 1st.

8. Plaintiffs argue that this Act also violates the Equal Protection Clause in the 14th Amendment of the US Constitution, which implies that no State has the right to deny anyone within its jurisdiction equal protection of the law; by allowing for 17 days of early voting before the election on November 3rd, incumbent candidates were given a clearly unequal advantage over their challengers as a result of the Commonwealth of Massachusetts enacting Bill H.4820.  This Act represents, in effect, an unfair and unequal incumbent protection scheme; voters tend to vote for the candidates who have name recognition, a commodity that incumbents generally come into the race with and challengers hope to acquire in limited time, who are unequally and disproportionally disadvantaged by a significantly shorter campaign as a result of the early voting provisions in Bill H.4820, and therefore suffer a disadvantage as challengers to being elected compared to incumbents.

9. Plaintiffs additionally argue that Article CV of the Massachusetts Constitution clearly envisions a *singular* voting day and not a number of days or weeks of voting for an election, with specific wording in Article CV regarding elections including "the act of voting *on the day on which such an election is to be held*." – note the term "voting day" is unambiguously singular and not plural, therefore the Plaintiffs argue that the extended early voting period in H.4280 is unconstitutional in this respect.

10. Plaintiffs allege that early voting in the form implemented through Bill H.4820 is an attempt by the legislature to fundamentally overhaul the Massachusetts voting system and

permit early voting absent any constitutional authority; additionally, the Elections and

Electors Clauses of the United States Constitution do not permit Massachusetts to violate its

own state constitution's restrictions on its lawmaking power when enacting legislation for the

conduct of federal elections.

11.  Plaintiffs allege that Defendants used the COVID-19 health crisis to unconstitutionally

change voting laws in the Commonwealth, and that other constitutional options existed to

effectively address the public health crisis per Plaintiffs' argument in Paragraph 4 above.

Plaintiffs argue that their equal right to be elected for public employments is a guaranteed

right in the US Constitution and in the Massachusetts Constitution per Article IX and that

an amendment to the Massachusetts Constitution limiting this right is not permitted per

Article XLVII, Part II Section 2, which states that no proposition inconsistent with the

following right of the individual, as at present declared in the declaration of rights, shall

be the subject of an initiative or referendum petition, including freedom of elections.

According to Plaintiffs, the Massachusetts legislature acted in clear violation of the

Constitution by enacting Bill H..4820 which instituted early voting absent any

constitutional authority; therefore, the early voting scheme under Bill H.4820 is

unconstitutional and the Plaintiffs argue that it must be struck down, and all early voting

ballots should be considered invalid and removed from the vote counts for the

Massachusetts 2020 federal and state elections.

**Electronic Voter Data and Tabulator Ballot Images Deleted in Violation of US Law**

12. Plaintiffs allege that all election voting data stored in the electronic voting machines used

in the Commonwealth is subject to deletion as of 30 days after an election, when the

machines are made available for reset and preparation for use in the succeeding election,

according to Massachusetts General Law – Part I, Title VIII, Chapter 54, Section 135A.

7

Plaintiffs argue that this is a violation of federal law and of particular concern when federal and state election results are currently being challenged here in Massachusetts and contested in states across the country, like Georgia, Michigan, Pennsylvania, and more. Further, election tabulator vendors were instructed by Defendant Galvin and the Commonwealth of Massachusetts Election Division to disable the functionality which allows the electronic tabulators to capture and store ballot images, and ordering that the electronic voting tabulators used in Massachusetts must delete such ballot images used to tabulate the vote in the recent November 3, 2020 federal and state elections in which the Plaintiffs were candidates. This is confirmed in a published article in the AP News Service on September28, 2020, where a spokesperson for Secretary of the Commonwealth of Massachusetts William Galvin, Debra O'Malley said: "Massachusetts election equipment does not capture and preserve ballot images when it tabulates votes"[2].

13. The above acts violate 52 USC 20701 and 20702, which specifically requires that retention and preservation of all records and papers by officers of elections, and which prohibits the theft, destruction, concealment, mutilation, or alteration of such records or papers. Ballot images from voting machines, and electronic voter data from voting machines, are records that require retention and preservation. There is no transparent audit of the voting data and ballot images used for tabulating the vote count for any of the candidates on the ballot, and as of the date of this complaint, all electronic voter data captured in the electronic voting machines in the Commonwealth is subject to reset and deletion; the declared vote counts for the 2020 federal and state elections are therefore

---

[2] https://apnews.com/article/fact-checking-afs:Content:9472752830

unreliable and only a manual recount of the legally valid ballots will determine the accurate and legal vote counts for the November 2020 election.

**Dominion Voting Systems Fraud and Manipulation**

14. Plaintiffs allege that, at the direction and approval of Defendant Galvin and the Commonwealth of Massachusetts Election Division, electronic voting tabulation machines and software manufactured by Dominion Voting Systems were used by 255 out of the 351 towns and cities throughout the Commonwealth of Massachusetts to tabulate the vote count in the recent November 3, 2020 federal and state elections in which the Plaintiffs were candidates.

15. Plaintiffs argue that Dominion Voting Systems machines and software have been shown to be unreliable and feature many vulnerabilities that would allow a person or persons to manipulate election results, by allowing machine operators or others to change the intended vote of the voter or modify vote counts via a "weighted race feature" in the machines which can assign fractions to each vote cast, in violation of state and federal election law; Texas, for example, rejected the use of these machines for these reasons. Democrat Senators Elizabeth Warren and Amy Klobuchar signed a letter on December 6, 2019 warning of similar concerns, stating that electronic voting systems across the country are "prone to security problems" and that in 2018 alone "voters in South Carolina [were] reporting machines that switched their votes after they'd inputted them, scanners [were] rejecting paper ballots in Missouri…", and researchers recently uncovered previously undisclosed vulnerabilities in "nearly three dozen backend election systems in 10 states" (see Exhibit B).  Reference a Complaint for Declaratory, Emergency and Permanent Injunctive Relief filed against Michigan state officials in US District Court,

Eastern District of Michigan, filed on November 25, 2020, which extensively asserts an especially egregious range of conduct in Wayne County and the City of Detroit with respect to alleged election fraud perpetrated by the use of Dominion Voting Systems, Case 2:20-cv-13134-LVP-RSW ECF No. 1.[3]

16. Also see Affidavit of Russell James Ramsland, Jr. (see Exhibit C), a management team member of Allied Security Operations Group, LLC. (ASOG) which provides a range of security services with a particular emphasis on cyber security, OSINT and PEN testing of networks, in which he confirms a large number of hacking and tampering vulnerabilities of Dominion voting systems, and he states "My colleagues and I at ASOG have studied the information that is publicly available concerning the November 3, 2020, election results. Based on the significant anomalies and red flags that we have observed, we believe there is a significant probability that election results have been manipulated within the Dominion/Premier system in Michigan.".  Further evidence of security vulnerabilities of Dominion voting machines and software are evidenced in the sworn statement by Navid Keshavarz-Nia (see Exhibit D), a chief cyber security engineer and a subject-matter expert in cyber security employed by a large defense contractor who has a Ph.D. degree in Management of Engineering and Technology from Cal Southern University and has advanced training from the Defense Intelligence Agency (DIA), Central Intelligence Agency (CIA), National Security Agency (NSA), DHS office of Intelligence & Analysis (I&A) and Massachusetts Institute of Technology (MIT).  The very same vulnerabilities described in the three referenced attachments are present in the

---

[3] https://defendingtherepublic.org/wp-content/uploads/2020/11/Michigan-Complaint.pdf

Dominion Voting Systems and software used throughout Massachusetts; the declared vote counts for the 2020 federal and state elections are therefore unreliable and only a manual recount of the legally valid ballots will determine the accurate and legal vote counts for the November 2020 election.

**Mail-In Ballot Signatures Are Not Properly and Consistently Verified**

17. Plaintiffs allege that Massachusetts city and town clerks did not properly and consistently match and verify signatures as required by law for either early mail-in voting ballots or absentee ballots. In the Election Advisory #20-02 Regarding Advanced Processing of Early Voting Ballots dated August 18, 2020, sent to city and town clerks by Defendant Galvin, election workers were instructed to treat and process early voting mail-in ballots or absentee ballots in the exact same manner, and were required to reject ballots that are missing a signature on the inner envelope (AV7 or EV7), or "otherwise deficient" – however this term "otherwise deficient" is vague and not defined in this document, and there is no clear indication or requirement for city and town clerks to match voter signatures on the inner envelope to the voter application as required by law.

18. Defendant Galvin, in certifying the November 3,[rd] 2020 election, must ensure that all early mail-in voting was conducted with the proper legal standards according to the Massachusetts law which requires the verification that signatures match both the inner envelope and the mail-in ballot application – See Massachusetts Gen. Laws Chapter 54 Section 94. Plaintiffs allege that voter signature verification did not consistently occur based on correspondence with town and city election clerks, and that this could allow non-registered and non-citizens to vote illegally. Practices that promote the casting of illegal or unreliable ballots or fail to contain basic minimum guarantees against such

11

conduct, can violate the Fourteenth Amendment by leading to the dilution of validly cast ballots. See Reynolds, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").

19. While Plaintiffs argue that all "no-excuse" early mail-in voting ballots are in fact unconstitutional and invalid, if the Court disagrees on this point, Plaintiffs argue that all such early mail-in voting ballots and absentee ballots whose signatures were not properly matched and verified according to Massachusetts state law are unlawful and invalid.

**Additional Election Irregularities**

18. Notwithstanding the serious concerns described above, Plaintiffs argue that the Massachusetts November election, including the Defendants' unconstitutional vote-by-mail and early voting schemes, which Defendant Galvin has called a "great success" in the media, was not a success but a massive failure in several respects and which exposes irregularities, voter fraud and election fraud that occurred in the November 3, 2020 Massachusetts election which the Court is asked to address, including but not limited to:

   a. Biased and inconsistent positions and rulings of Defendants regarding signature requirements: Following the Massachusetts Supreme Judicial Court's allowance of the electronic collection of signatures on nomination papers in Goldstein v. Secretary of the Commonwealth, 484 Mass. 516, 531-532 (2020), Plaintiff Helen Brady, with the aid of a software application provided by a third-party vendor, had gathered all of her voter signatures electronically, collecting the required number of signatures which were legitimate. Nonetheless, acting upon the objection of Leon Arthur Braithwaite, II, the vice-chair of the Massachusetts

12

Democratic State Committee, the State Ballot Law Commission (SBLC) struck all of the certified signatures that Brady had legally secured from voters in an effort to appear on the ballot, claiming that the process Brady utilized failed to comply with formal electronic signature requirements outlined by the court in the Goldstein decision (Goldstein process), as well as with an "advisory" issued by the Secretary of the Commonwealth in response to the Goldstein decision. In case 485 Mass. 345 (2020), Helen Brady v. State Ballot Law Commission (SBLC) & Others, Brady appealed the ruling and on July 13, 2020, the Supreme Judicial Court vacated the SBLC decision and ordered the Secretary to place Brady's name on the ballot for the State primary election.  Although this level of scrutiny was applied to one candidate attempting to gain access to the ballot, the same legal standards were not applied to the general election mail-in ballots, where Defendant Galvin applied loose interpretation and adherences to his own proclaimed guidelines and ignored the state legal statue which includes the requirement to verify voter signatures.

b.  Vote-by-mail applications broadly sent:  4.5 million vote-by-mail applications were sent to voters in the Commonwealth, and Plaintiffs allege that a high percentage of these, which are believed to number in the hundreds of thousands, were returned as undeliverable, while thousands more were reportedly sent to ineligible voters, deceased residents and former residents; this threatens election integrity and opens the door for voter fraud, and is in clear violation of federal law.  Defendants are responsible for removing people from the voter rolls that are ineligible to vote; The National Voter Registration Act passed by President Bill

Clinton in 1993 and amended in Congress in 1993 and 1994, requires that Defendant Galvin conduct a general program and make a reasonable effort to purge the Massachusetts voter rolls. The high number of returned applications, and applications sent to ineligible and deceased residents, indicates that they clearly failed to do so in violation of federal law.

c. Vote-by-mail ballots sent to voters who did not request them: Plaintiffs allege that many residents received ballots by mail who did not request them; this is in violation of the current law and has left the election vulnerable to voter fraud, where ineligible voters could have used improperly sent vote-by-mail applications to vote illegally, noting that Massachusetts law does not require voter ID.

d. Voters who went to vote in person on November 3rd told they already voted: Plaintiffs allege that residents were told when then went to vote in person on election day that they had already voted by mail. Mail-in voting has left the election vulnerable to voter fraud.

e. Unsecure ballot drop boxes: Defendants placed hundreds of ballot drop boxes throughout the Commonwealth, and Plaintiffs allege that such drop boxes are unsecure, reckless and facilitate potential voter fraud and disenfranchisement; a ballot drop box in Boston was deliberately set on fire on October 25th, destroying many ballots and disenfranchising those voters, and they are susceptible to foul play; Plaintiffs argue that they threaten the integrity of the election process.

19. These and other irregularities provide this Court grounds to set aside the results of the 2020 General Election for all candidates on the ballot and provide the other declaratory

and injunctive relief requested herein.  Please see relevant voter affidavits attached, Exhibits E, F, and G.

## JURISDICTION AND VENUE

20. This Court has subject matter under 28 U.S.C. § 1331 which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

21. This Court also has subject matter jurisdiction under 28 U.S.C. § 1343 because this action involves a federal election for Congress and for President of the United States. "A significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question." Bush v. Gore, 531 U.S. 98, 113 (2000) (Rehnquist, C.J., concurring); Smiley v. Holm, 285 U.S. 355, 365(1932).

22. The jurisdiction of the Court to grant declaratory relief is conferred by 28 U.S.C. 2201 and 2202 and by Rule 57 and 65, Fed. R. Civ. P. 7.

23. This Court has jurisdiction over the related Massachusetts Constitutional claims and State law claims under 28 U.S.C. 1367.

24. Because the United States Constitution reserves for state legislatures the power to set the time, place, and manner of holding elections for Congress and the President, state executive officers, including but not limited to Defendant Secretary Galvin, have no authority to exercise that power unilaterally or ignore existing legislation or the Massachusetts Constitution or US Constitution itself.

## THE PARTIES

25. Each of the following Plaintiffs are registered Massachusetts voters, qualified electors, adult individuals and Republican nominees for Congress:  John Paul Moran, candidate for Congress in the MA 6th Congressional District and resident of Middlesex County; Helen Brady, candidate for Congress in the MA 9th Congressional District and resident of Plymouth County; Caroline Colarusso, candidate for Congress in the MA 5th Congressional District and resident of Middlesex County.  Moran, Brady, and Colarusso bring this suit with standing in their capacity as candidates for federal office, and as private citizens.

26. Each of the following Plaintiffs are registered Massachusetts voters, qualified electors, adult individuals and Republican nominees for Massachusetts State Representative: Ingrid Centurion, candidate for State Representative in the 13th Middlesex District and resident of Middlesex County; Craig Valdez, candidate for State Representative in the 4th Plymouth District and resident of Plymouth County. Centurion and Valdez bring this suit with standing in their capacity as candidates for Massachusetts state office, and as private citizens.

27. Defendant the Commonwealth of Massachusetts has its capitol located in Boston Massachusetts.

28. Defendant William F. Galvin ("Secretary Galvin") is named as a defendant in his official capacity as Massachusetts' Secretary of the Commonwealth with a principle office at Secretary of the Commonwealth, McCormack Building, One Ashburton Place, Room 1611, Boston, MA 02108. Secretary Galvin is the "chief elections officer" responsible for overseeing the conduct of Massachusetts elections, and is charged with the general

supervision of Massachusetts' elections and election laws. Local election officials must follow Secretary Galvin's instructions regarding the conduct of elections according to Massachusetts state law.

29. Defendant Charles D. Baker ("Governor Baker") is named herein in his official capacity as Governor of the Commonwealth of Massachusetts with principle office at Office of the Governor, Massachusetts State House, 24 Beacon St., Room 280, Boston, MA 02133. Governor Baker is responsible for signing bills into law, enumerating and ascertaining the number of votes given for the election of presidential electors, causing certificates of election to be delivered to presidential electors, issuing writs of election, and general superintendence over the executive branch of state government.

## STATEMENT OF FACTS

30. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988, and under MCL 168.861, to remedy deprivations of rights, privileges, or immunities secured by the Constitution and laws of the United States and to contest the election results, and the corollary under the Massachusetts Constitution.

31. The Massachusetts Constitution sets forth the mandatory procedural requirements to amend the Constitution which must be strictly followed according to Article XLVIII of the Massachusetts Constitution.

32. The United States Constitution sets forth the authority to regulate federal elections. With respect to congressional elections, the Constitution provides.

33. The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any

time by Law make or alter such Regulations, except as to the Places of choosing

Senators. U.S. CONST. art. I, § 4 ("Elections Clause").

34. With respect to the appointment of presidential electors, the Constitution provides: Each

State shall appoint, in such Manner as the Legislature thereof may direct, a Number of

Electors, equal to the whole Number of Senators and Representatives to which the State

may be entitled in the Congress: but no Senator or Representative, or Person holding an

Office of Trust or Profit under the United States, shall be appointed an Elector. U.S.

CONST. art. II, § 1 ("Electors Clause")

35. And Plaintiffs bring this action, to vindicate their constitutional right to a free and fair

election ensuring the accuracy and integrity of the process pursuant to the US

Constitution and the Massachusetts Constitution.

36. Based upon all of the allegations of unconstitutional, illegal and invalid voting, fraud,

statutory violations, and other misconduct, as stated herein and in the attached affidavits,

it is necessary to order appropriate relief, strike Bill H.4820 as unlawful and

unconstitutional, decertify the previously certified election results for all federal,

statewide, regional and local offices, and enjoin Defendants from transmitting the

currently certified election results to the Electoral College, pending a full investigation

and court hearing, and to order an independent audit and manual recount of the votes for

the November 3, 2020 election, including the removal of all invalid/illegal votes; or

alternatively voiding the election and ordering a new election to be conducted legally

within the laws of the Massachusetts Constitution and federal law, as a remedy to ensure

the accuracy and integrity of the election.

**PRAYER FOR RELIEF**

37. Accordingly, Plaintiffs seek an emergency order by the Court instructing Defendants to decertify the results of the General Election for the Office of President and all federal, statewide, regional and local offices;

38. Plaintiffs seek a declaratory judgment by the Court declaring that current certified election results violates the Due Process Clause, U.S. CONST. Amend. XIV;

39. Plaintiffs seek an emergency injunction prohibiting Defendants from selecting electors and transmitting the currently certified election results to the Electoral College;

40. Plaintiffs seek an emergency order by the Court striking Massachusetts Bill H.4820 as unlawful and unconstitutional;

41. Plaintiffs seek an emergency order by the Court to maintain the status quo of all voting machines in the Commonwealth, bar the wiping, resetting or removal of data of any such voting machines, and order the impounding of all voting machines and software in Massachusetts for expert inspection in the until further order of the Court;

42. Plaintiffs seek an emergency order by the Court demanding a full audit and manual recount of all ballots submitted by Massachusetts voters in the November 3, 2020 federal, state, regional and local elections, including verification of all valid/legal ballots and a full audit of all legal absentee ballot inner envelopes and applications to confirm that signatures match and are validated as required by law, and the removal from the vote counts of all invalid/illegal ballots, including those unconstitutional ballots submitted by early voting and "no-excuse" vote-by-mail ballots per Bill H.4820, ballots submitted by non-US citizens, and any other ballots submitted in violation of Massachusetts or US election laws, which combined are expected to exceed 2 million votes out of 3.6 million

votes cast, and therefore have the possibility of changing the election results of the the federal, statewide, regional and local candidates' races;

43. Or, alternatively and in place of Paragraph 42 above, Plaintiffs seek an emergency order by the Court voiding the election and ordering a new election on a single election day conducted legally within Massachusetts state law as required by the Massachusetts Constitution, as a remedy to ensure the accuracy and integrity of the election.  Plaintiffs in this case ask the Court to prohibit the use of electronic voting machines and require a manual count of all ballots, prohibit unconstitutional early voting and "no-excuse" vote by mail, provide for the protection and public health safety of voters by requiring masks and a sufficient number of polling places for voters in order to maintain recommended safe social distancing in response to the COVID-19 pandemic, require that all voters casting votes are legal US citizens in accordance with US law and are properly registered to vote in Massachusetts, and allowing for existing legal absentee voting which conforms to Article CV of the Massachusetts Constitution; and that in this case, no electors are to be sent to the Electoral College from Massachusetts as the deadline for states to select their electors is December 14, 2020, and this deadline cannot realistically be met with such a new election;

44. Plaintiffs further request the Court grant such other relief as is just and proper, including but not limited to, the costs of this action and their reasonable attorney fees and expenses pursuant to 42 U.S.C. 1988.

Respectfully Submitted, this 7th Day of December, 2020

For Plaintiffs by John Paul Moran

John Paul Moran, Plaintiff *pro se*
25 Winsor Road
Billerica, MA  01821
JohnPaul1096@hotmail.com
617-804-7306

## VERFICATION

I hereby verify that I have read the contents of the foregoing Complaint and Emergency Motion for Preliminary Injunction, and that the facts are true and accurate, to the best of my knowledge and belief.

Dated: this 7th Day of December, 2020

John Paul Moran, Plaintiff *pro se*

Caroline Colarusso, Plaintiff *pro se*

Helen Brady, Plaintiff *pro se*

Ingrid Centurion, Plaintiff *pro se*

Craig Valdez, Plaintiff *pro se*